AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

ONE BLACK AND SILVER SAMSUNG PHONE WITH BLACK CASE, SEIZED FROM LUIS ALFREDO RAMOS-LOPEZ

Case No. 22-MR-60

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ____JUDICIAL____ District of ____NEW MEXICO____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 (a)(1),(b)(1)(A) | Distributing and possessing with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine a controlled substances. |

The application is based on these facts:
See the attached affidavit of DEA Task Force Officer Frank Chavez which is incorporated by reference and has been reviewed and approved by AUSA Paul Spiers.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Frank Chavez, Task Force Officer, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means)*.

Date: __01/13/2022__

*Judge's signature*

City and state: Albuquerque, New Mexico

United States Magistrate Judge Jerry H. Ritter
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ONE BLACK AND SILVER SAMSUNG PHONE WITH BLACK CASE, SEIZED FROM LUIS ALFREDO RAMOS-LOPEZ | Case No. |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Frank Chavez, Task Force Officer of the Drug Enforcement Administration (DEA), being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – two electronic devices – which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Officer of the United States Drug Enforcement Administration (DEA) assigned to the Albuquerque District Office. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516, 21 U.S.C. 841(a)(1)(b) and 841 (b)(1)(A). I have been a Task Force Officer since 2011. I have been a certified law enforcement officer within the state of New Mexico since 1987.

3. My experience as a police officer includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working undercover, conducting consensual encounters, as well as working with informants. I have received training in, and have experience in, the investigation of violations of the federal drug and money laundering laws, including the offenses listed below. I have participated in the investigation of numerous drug trafficking conspiracies. As a result, I am familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations ("DTOs") to purchase, transport, store and distribute drugs, and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

4. Through my training and experience, I have learned that:

   a. Drug traffickers often conceal names, addresses, telephone numbers, email addresses, or other pertinent codes and other information including contact information for their current or past illegal drug source(s) of supply, customers, or criminal associates in the electronic memory of their cellular/wireless telephones;

   b. Drug traffickers often conceal photographs of drugs, vehicles, locations, or photographs of drug associates in the electronic memory of their cellular/wireless telephones;

   c. Drug traffickers often communicate with their illegal drug source(s) of supply, customers, or criminal associates by text messaging and/or email from their cellular/wireless telephones. Accordingly, pertinent text and/or email messages regarding drug trafficking are often stored in the electronic memory of the

cellular/wireless telephone. Additionally, I am aware many illegal drug transporters are required to provide updates during their journey to inform co-conspirators or purchasers of their location and status of the delivery, and such updates are often completed by use of photos, text messages, or phone calls.

    d. Drug traffickers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business. As such, they often store bank account information, drug ledgers, or lists of where assets are stored in the electronic memory of the cellular/wireless telephone.

5. The following information is based upon my personal knowledge, as well as information provided by other federal, state and local officers and is presented as probable cause to search the listed device. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The Phone to be searched is (1) one black and silver Samsung with black case, seized from Luis Alfredo RAMOS-LOPEZ on January 10, 2022. The aforementioned cellular phones, hereafter referred to as the "RAMOS-LOPEZ PHONE" is sealed in a self-sealing evidence envelope bearing number S001308360, and is currently located at the DEA Albuquerque District Office.

7.     The applied-for warrant would authorize the forensic examination of the RAMOS-LOPEZ PHONE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.     On January 10, 2022, Drug Enforcement Administration (DEA) Special Agent (S/A) Jarrell W. Perry and DEA Task Force Officer (TFO) Frank Chavez were at the Greyhound bus station in Albuquerque, New Mexico to check the eastbound Greyhound bus that makes a regularly scheduled stop in Albuquerque, New Mexico.

9.     S/A Perry boarded the bus and began speaking with the various passengers as they re-boarded and sat down in their respective seats. S/A Perry displayed his DEA badge to a male, later identified as Luis Alfredo RAMOS-LOPEZ, identified himself as a police officer to RAMOS-LOPEZ, asked for and received permission to speak with RAMOS-LOPEZ. S/A Perry asked RAMOS-LOPEZ if he had luggage with him and RAMOS-LOPEZ said no.

10.     S/A Perry had earlier located a black colored suitcase with red polka dots in the luggage compartment of the bus with a name tag attached in the name of Luis LOPEZ, destination Oklahoma, tag number AA4142004. S/A Perry asked RAMOS-LOPEZ if he would walk off of the bus to look at a bag that was underneath of the bus and RAMOS-LOPEZ agreed. RAMOS-LOPEZ disclaimed all interest and ownership in the black colored with red polka dots suitcase. S/A Perry determined from his experience that RAMOS-LOPEZ abandoned the suitcase. S/A Perry subsequently searched the suitcase, which revealed numerous bundles wrapped in clear plastic concealed inside of suitcase. S/A Perry knew from his training and experience that the bundles were consistent with bundles of illegal narcotics.

11. S/A Perry handcuffed RAMOS-LOPEZ, thus placing him under arrest. RAMOS-LOPEZ was removed from the Greyhound bus by TFO Chavez. TFO Chavez conducted a search of RAMOS-LOPEZ and located a Greyhound luggage claim ticket, tag number AA4142004, in the right front pants pocket of RAMOS-LOPEZ. RAMOS-LOPEZ was transported to the DEA Albuquerque District Office (ADO) by S/A Perry and TFO Chavez.

12. At the DEA ADO, S/A Perry and TFO Chavez removed five bundles, wrapped in clear plastic and gray duct-tape - bundles containing a crystal substance - from RAMOS-LOPEZ's suitcase. S/A Perry and TFO Chavez weighed the five bundles recovered from RAMOS-LOPEZ's suitcase, a weighing which resulted in a total weight of approximately 20.75 gross kilograms. S/A Perry and TFO Chavez field-tested the crystal substance from one of the bundles, which revealed a positive reaction for the presence of methamphetamine.

13. S/A Perry knew that based upon his training and experience that this amount of methamphetamine is an amount that is consistent with distribution rather than personal use.

14. Based on the aforementioned details, the RAMOS-LOPEZ PHONE referenced in Attachment A it is probable that a processing of the phone will contain and develop evidence relating to the drug distribution activities of the Defendant RAMOS-LOPEZ – evidence inclusive of but not limited to:

    a. Lists of co-conspirators, customers and related identifying information;
    b. Types, amounts, and prices of drugs trafficked, as wells as dates, places, and amounts of specific transactions;
    c. Information related to sources or customers of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. Bank records, checks, credit card bills, account information, and other financial records and other drug records.

    e. Photographs or videos depicting locations visited by RAMOS-LOPEZ during illegal drug distribution activities.

15. The RAMOS-LOPEZ PHONE referenced in Attachment A is currently in storage at the DEA Albuquerque District Office. Based on my training and experience and my knowledge of how this phone was handled and secured into evidence, I know that the RAMOS-LOPEZ PHONE referenced in Attachment A has been securely stored in a manner in which its contents are - to the extent material to this investigation - in substantially the same state as they were in when the cellular phone first came into the possession of the DEA.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. This phone send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or video.

c. Portable media player: A portable media player (or "MP3 Player" or "iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the location where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each Satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

  f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that the RAMOS-LOPEZ PHONE referenced in Attachment A has smartphone capabilities that allows it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. I also know, based on my training, experience, and research, that the RAMOS-LOPEZ PHONE can access the Internet and would have an IP address. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and to what purpose and benefit.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered thru forensic examination.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the evidentiary development of the items described in Attachment B.

Respectfully submitted,

Frank Chavez
Task Force Officer
Drug Enforcement Administration

Submitted electronically and worn telephonically on the 13th day of January, 2022.

The Honorable Jerry H. Ritter
United States Magistrate Judge

# ATTACHMENT A

**Property to be Searched**

The device to be searched consist of (1) one black and silver Samsung Phone with black case seized from Luis Alfredo RAMOS-LOPEZ, at the Greyhound bus station located in Albuquerque, New Mexico on January 10, 2022, and further described as follows;

- (1) Black and Silver Samsung Phone with black case

The above listed device, hereafter referred to as The RAMOS-LOPEZ phone, is contained in a self-sealing evidence envelopes S001308360 currently located at the DEA Albuquerque District Office.

This warrant authorizes the forensic examination of The RAMOS-LOPEZ phone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1. All records on the device described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 18 U.S.C. § 2 involving Luis Alfredo RAMOS-LOPEZ, including but not limited to:

    a. Lists of customers and related identifying information;

    b. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions.

    c. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. all bank records, checks, credit card bills, account information, and other financial records;

    e. Records pertaining to travel including receipts, electronic tickets, emails, text messages, and any electronic notes pertaining to travel by RAMOS-LOPEZ, and any known or unknown co-conspirators.

    f. Digital photographs or videos depicting locations traveled to/from, drugs, or criminal associates known or unknown of RAMOS-LOPEZ;

    g. Text or picture messages, voicemails, emails, or other communications between RAMOS-LOPEZ, and any criminal associates known or unknown.

2. Evidence of user attribution showing who used or owned The RAMOS-LOPEZ phone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.